Cite as 2020 Ark. App. 384

# ARKANSAS COURT OF APPEALS

DIVISION III

No. CV-19-539

| | |
|---|---|
| OCWEN LOAN SERVICING, LLC; AND WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY IN ITS CAPACITY AS OWNER TRUSTEE OF MATAWIN VENTURES TRUST SERIES 2016-2<br><br>APPELLANTS<br><br>V.<br><br>TRAVIS ODEN AND TINA M. ODEN<br>APPELLEES | **OPINION DELIVERED:** September 9, 2020<br><br>APPEAL FROM THE SALINE COUNTY CIRCUIT COURT [NO. 63CV-16-729]<br><br>HONORABLE GRISHAM PHILLIPS, JUDGE<br><br>AFFIRMED |

## ROBERT J. GLADWIN, Judge

On March 14, 2019, the Saline County Circuit Court granted judgment to appellees Travis Oden and his wife, Tina, against appellants Ocwen Loan Servicing, LLC, and Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, solely in its capacity as owner trustee of Matawin Ventures Trust Series 2016-2 (collectively referred to as "Ocwen"). The parties had filed competing motions for summary judgment related to a promissory note and deed of trust secured by real property and executed on December 31, 2007, that obligated the Odens, who failed to pay. Ocwen accelerated the note on March 17, 2011, and filed a foreclosure complaint more than five years later on July 26, 2016. On appeal from the circuit court's finding that Ocwen's complaint is barred by the statute of limitations, Ocwen raises three points: (1) the enforcement of the deed of trust is not time-

barred because Ocwen abandoned its prior acceleration; (2) Ocwen's payment of taxes and insurance on the property confirmed the debt; and (3) Ocwen has an equitable lien against the property. We affirm.

I. *Facts*

On December 31, 2007, the Odens executed a note for $132,000 for the real property at 830 Nash Cove, Alexander, Arkansas. The original lender was AAA Worldwide Financial Company d/b/a Worldwide Mortgage Company. A deed of trust was executed to secure the note, granting the lender a mortgage lien on the property. The lender's loan servicer, GMAC Mortgage, LLC, "force placed" insurance on the property, increasing the loan payments. The Odens attempted to meet those increased payments but disputed the force-placed insurance, and their payments were returned to them on several occasions.

The Oden's last payment was in November 2010, and they stopped making payments thereafter. GMAC declared the Odens in default on December 2, 2010. On March 17, 2011, the Odens' loan accelerated, and the notice of acceleration states:

> You are currently in default under the terms of your note and deed of trust/mortgage in that you have failed to make the payments due through the date of this letter. The debt has been accelerated. The amount of the debt that we are attempting to collect and the total amount currently due on your loan as of the date of this letter is $134,270.95.

On April 15, 2011, a "Trustee's Notice of Default and Intention to Sell" was filed. The notice declared that default had occurred and the indebtedness was "wholly due." A statutory foreclosure sale of the property was set for June 14, 2011, at the Saline County Courthouse.

2

GMAC was sued in several class-action lawsuits, and it eventually filed for bankruptcy. On February 16, 2013, Ocwen Loan Servicing, LLC, became the Oden's loan servicer, replacing GMAC. Ocwen had the same address and phone number as GMAC.

On July 27, 2016, a second "Trustee's Notice of Default and Intention to Sell" was filed, setting a statutory foreclosure sale for October 12, 2016. A "Delinquency Notice" dated August 1, 2016, and addressed to the Odens states that as of July 30, 2016, they were 2068 days delinquent on their mortgage loan. Also on July 27, Ocwen gave notice to the Odens that it would no longer service the loan payments after August 15 and that Kondaur Capital Corporation would collect the payments after that date.[1] But on August 24, Kondaur's letter to the Odens notified them that it had transferred the loan servicing back to Ocwen as of August 16.[2] The letter also stated, "As of August 19, the amount owed on the account is $196,827.42." On September 28, a notice of cancelation of the nonjudicial foreclosure sale was filed.

The Odens filed an amended verified petition for declaratory judgment and request for injunctive relief against Ocwen on June 23, 2017. They alleged that the statute of

---

[1]The notice explained:

> As a result of the default on the above mentioned mortgage loan, we made a claim for payment on the Federal Housing Administration (FHS) mortgage insurance. In connection with that claim, we assigned the mortgage loan to FHA. FHA sold the mortgage loan to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2016-2, which is now the new owner of the mortgage loan. In connection with that sale, the servicing to the mortgage loan will be transferred, as set forth herein, to Kondaur Capital Corporation.

[2]The Odens received a letter dated May 22, 2017, from Ocwen stating that the loan had been transferred to Ocwen effective May 9, 2017.

3

limitations to enforce a promissory note and deed of trust in Arkansas is five years. Ark. Code Ann. § 16-56-111 (Repl. 2005); Ark. Code Ann. § 18-49-101 (Repl. 2015). They claimed that when there is an optional acceleration clause in the deed of trust, the statute of limitations accrues when the lender or servicer first accelerates the debt. *United-Bilt Homes, Inc. v. Sampson*, 315 Ark. 156, 864 S.W.2d 861, 862 (1993). The Odens claimed that the loan first became delinquent on December 2, 2010, and the loan was accelerated on March 17, 2011. Thus, Ocwen's action to enforce the loan after March 17, 2016, is barred by the statute of limitations. The Odens asked for a declaratory judgment finding that any future foreclosure action is barred. The Odens also sought a preliminary injunction under Rule 65 of the Arkansas Rules of Civil Procedure (2019) to prohibit Ocwen from taking any future action to enforce the loan.

Ocwen answered and pled the following affirmative defenses: (1) failure to state facts sufficient to constitute any cause of action against it; (2) failure to mitigate damages; (3) no duty to the Odens was owed or breached; (4) Ocwen's acts or omissions were not a proximate cause of the loss or damages for which the Odens sought recovery; (5) any damages to the Odens were proximately contributed to or caused by the neglect of others not subject to Ocwen's control and were not caused by Ocwen; (6) equitable tolling; (7) the statute of limitations ceased to accrue because Ocwen or their predecessors in interest abandoned the acceleration by attempting to collect less than the accelerated amount of the debt; and (8) the Odens reaffirmed the debt. Ocwen supplemented its answer with the affirmative defenses that it had an equitable lien against the property and setoff or recoupment.

4

On September 10, 2018, Ocwen moved for summary judgment that the note remained enforceable because (1) the lenders had abandoned the prior acceleration of the debt; (2) payment of taxes revived the debt; and (3) equity prevents the Odens from recovering a windfall as a result of their failure to pay the debt. In its brief, Ocwen alleged that after it acquired servicing, Ocwen sent many demands for payment that were less than the total accelerated debt. Ocwen attached several documents entitled "Delinquency Notice" that had been sent to the Odens on June 16, July 23, August 18, October 22, November 17, and December 16, 2015; and January 19, and February 18, 2016. Each notice contains the number of days since the date the loan had become delinquent, December 2, 2010, and states a total amount necessary to be paid to bring the loan current. For example, the notice of January 19, 2016, states that the Odens were 1875 days delinquent and owed $71,031.12 to bring the loan current. Also attached to the motion is a pre-foreclosure referral letter dated January 4, 2016, from Ocwen stating that the mortgage was past due and that "the property may be referred to foreclosure after 14 days from the date of this letter." The letter alleged that as of December 28, 2015, the Odens owed $68,908.58 in order to reinstate the loan. Also attached is a notice of acceleration of loan maturity dated March 25, 2016, addressed to Travis Oden, and it alleged that the note was accelerated effective as of that date because of the default.

The Odens responded to the summary-judgment motion and filed their own motion for summary judgment, arguing that Ocwen failed to enforce the note within five years of the debt being accelerated. Attached to the motion were exhibits including Travis Oden's

5

affidavit that he had paid the property tax and homeowners insurance and tax receipts for

years 2014 (paid by the Odens); and 2015, 2016, and 2017 (paid by Ocwen).

The circuit court granted the Odens summary judgment on March 14, 2019. The

court found in part:

> 6. On or before March 17, 2011, the Loan was accelerated as stated on the Notice of Default and Acceleration (the "Notice of Acceleration"). The Notice of Acceleration states:
>
> > "You are currently in default under the terms of your note and deed of trust/mortgage in that you have failed to make the payments due through the date of this letter. **The debt has been accelerated**. The amount of the debt that we are attempting to collect and the **total amount currently due** on your loan as of the date of this letter is $134,270.95." (emphasis added).
>
> 7. Accordingly, the Loan has been accelerated and in default since March 17, 2011.
>
> 8. On February 16, 2013, the servicing of the Loan was transferred to Ocwen.
>
> 9. On July 27, 2016, Ocwen filed a Trustee's Notice of Default and Intention to Sell (the 'New Trustee's Notice") stating that the Loan was in default and that Property would be sold at a non-judicial foreclosure sale at the Saline County Courthouse on October 12, 2016.
>
> 10. Also on July 27, 2016, Ocwen sent the Odens a Notice of Servicing Transfer (the 'Notice of Servicing Transfer") stating that the "servicing of the abovementioned mortgage loan is being transferred, effective August 16, 2016." Pursuant to the Notice of Servicing Transfer, Ocwen assigned the Loan to the Federal Housing Administration ("FHA"), which subsequently sold the Loan to Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not in its individual capacity but solely in its capacity as Owner Trustee of Matawin Ventures Trust Series 2016-2 ("Wilmington"). Wilmington then hired Kondaur Capital Corporation ("Kondaur") to service the Loan.
>
> 11. On May 9, 2017, Kondaur returned the Loan to Ocwen. The Deed of Trust was then assigned back to Ocwen via that Assignment of Deed of Trust (the "Ocwen Assignment of Deed of Trust") filed of record on July 24, 2017, as Instrument # 2017-13356.

12. As of the date of the hearing, February 8, 2019, the Loan has been accelerated for 2,886 days, or 7 years 10 months and 23 days.

In its order, the court analyzed the question of whether the enforcement of the loan is barred by Ark. Code Ann. § 18-49-101(a), which provides a defense to foreclosure suits not brought within the applicable statute of limitations—five years under Ark. Code Ann. § 16-56-111(a) (Repl. 2005). The circuit court stated that when the note is an installment contract with an optional acceleration clause such as in this case, the statute of limitations begins to run when the note is accelerated. *Oaklawn Bank v. Alford*, 40 Ark. App. 200, 203, 845 S.W.2d 22, 24 (1993). The circuit court also cited the basic rule of statutory construction—when a statute is clear, it is given its plain meaning, and we do not search for legislative intent. *Pugh v. St. Paul Fire & Marine Ins. Co.*, 317 Ark. 304, 307, 877 S.W.2d 577, 578 (1994). The court found in favor of the Odens and ordered as follows:

> Ocwen argues that it abandoned the acceleration of the debt, and therefore it is not barred by the statute of limitations. Here, however, ARK. CODE ANN. § 18-49-101(a) and ARK. CODE ANN. § 16-56-111(a) are "clear" and should be given their "plain meaning." Neither section, nor the case law interpreting said sections, provides for an "abandonment" exception. The case of *Leonard v. Ocwen Loan Servicing, LLC*, 616 Fed. App. 677 (5th Cir. Tex. 2015), relied upon by Ocwen is not a reported case and can only have persuasive value. The Court finds, however, that *Leonard v. Ocwen*, an appeal from the Southern District of Texas applying Texas law and involving a pro se borrower, is not persuasive and notes that the outcome of that case might have been substantially different had the borrower been represented by counsel.

This appeal timely followed.

## II. *Standard of Review and Applicable Law*

We recently set forth this court's standard of review as follows:

> Summary judgment is a remedy that should be granted only when there are no genuine issues of material fact to litigate and when the case can be decided as a matter of law. *Smith v. St. Paul Fire & Marine Ins. Co.*, 76 Ark. App. 264, 268, 64

7

S.W.3d 764, 767–68 (2001). Normally, we determine if summary judgment is proper by deciding whether evidentiary items presented by the moving party leave a material question of fact unanswered, viewing all evidence in favor of the nonmoving party. *Selrahc Ltd. P'ship v. SEECO, Inc.*, 2009 Ark. App. 865, at 3, 374 S.W.3d 33, 35–36. However, in cases such as this where the parties do not dispute the essential facts, we simply determine whether the moving party was entitled to judgment as a matter of law. *Id.*

*Equity Bank v. Southside Baptist Church of Lead Hill*, 2020 Ark. App. 199, at 3, 599 S.W.3d 133, 135. The Arkansas Supreme Court held,

"When parties file cross-motions for summary judgment, as was done in this case, they essentially agree that there are no material facts remaining, and summary judgment is an appropriate means of resolving the case. As to issues of law presented, our review is de novo." *State v. Cassell*, 2013 Ark. 221, 4–5, 427 S.W.3d 663, 666 (citations omitted). "De novo review means that the entire case is open for review." *Certain Underwriters at Lloyd's, London v. Bass*, 2015 Ark. 178, at 9, 461 S.W.3d 317, 323 (citations omitted).

*Washington Cty. v. Bd. of Trs. of the Univ. of Ark.*, 2016 Ark. 34, at 3, 480 S.W.3d 173, 175.

Arkansas Code Annotated section 16-56-111(a) provides that actions to enforce written obligations, duties, or rights shall be commenced within five years after the cause of action shall accrue. A cause of action on an entire debt owed under an installment sales contract with an optional acceleration clause does not arise until the option is exercised. *United-Bilt Homes*, *supra*.

III. *Abandonment of Acceleration*

Ocwen argues that it is entitled to enforce the note and mortgage because the prior acceleration, performed on March 17, 2011, was abandoned. It argues that there is conclusive evidence that it abandoned the previous acceleration by attempting to collect less than the loan balance. Ocwen claims that "although this case proceeded below under the mistaken impression that Arkansas precedent did not speak directly to this issue," the

8

Arkansas Supreme Court has recognized that an acceleration of mortgage indebtedness can be abandoned at the creditor's discretion, thus reviving a new limitations period. *Mitchell v. Fed. Land Bank of St. Louis*, 206 Ark. 253, 174 S.W.2d 671, 676–77 (1943) (holding that the mortgagor could waive its previously declared acceleration and reinstate its mortgages according to their original terms when the first set of foreclosures were dismissed).

Ocwen relies on *Alcala v. Deutsche Bank National Trust Co. for Long Beach Mortgage Loan Trust 2006-5*, 684 F. App'x 436 (5th Cir. 2017), which held that a noteholder may unilaterally abandon acceleration after its exercise by requesting payment on less than the full amount of the loan. Deutsche first accelerated the note at issue in 2009 by filing in state court an application for expedited foreclosure. *Alcala*, 684 F. App'x at 439. On September 11, 2012, Deutsche sent a notice of default giving the Alcalas thirty-five days to cure by paying the past-due amount and stating that failure to do so would result in the entire loan balance becoming due, the loan being accelerated, and foreclosure proceedings being initiated. *Id.* The court held that the 2012 notice of default manifested an unequivocal intent to abandon its 2009 acceleration by indicating that the Alcalas could avoid foreclosure by paying within a given period the past-due amount, which was less than the full balance, effectively abandoning the acceleration and resetting the statute of limitations. *Id.*; *see also Meachum v. Bank of N.Y. Mellon Tr. Co., N.A.*, 636 F. App'x 210, 212–13 (5th Cir. 2016) (holding that a lender's demand of the amount required to reinstate the loan—rather than the fully accelerated loan balance—exhibited an abandonment of a previous acceleration for the purposes of Texas's statute of limitations on enforcement of promissory notes).

Ocwen argues that the circumstances herein demonstrate that it had abandoned the earlier acceleration. It contends that the Odens admit that Ocwen made repeated attempts to collect less than the accelerated balance following the first acceleration. Starting in 2015, Ocwen sent a battery of letters asking the Odens to reinstate rather than demanding full satisfaction of the loan. The Odens were given an opportunity to modify the loan so they could bring the account to good standing. Ocwen claims that its multiple demands for less than the full, accelerated loan balance, its attempts to accommodate the Odens to help bring them current, and the Odens' inaction relative to the foreclosure establish that Ocwen abandoned the 2011 acceleration. Ocwen argues that the Odens acknowledged that Ocwen indicated it was no longer pursing foreclosure, and they admit that if Ocwen considered the loan balance accelerated, it would have made no sense for it to send a new notice of acceleration in 2016. Thus, Ocwen argues that because of its abandonment of the first acceleration, enforcement of the debt is not time-barred.

Ocwen also argues that if holders of the debt have no ability to abandon a previous acceleration, they will often be forced to move directly to foreclosure. Under this public-policy argument, Ocwen contends that it would be unfortunate when a servicer to whom the debt is transferred wished to work with the borrowers.

Despite these arguments, we affirm the circuit court's ruling and hold that Ocwen's abandonment argument is not supported by Arkansas law. Ocwen admits that the applicable statute of limitations is five years, Ark. Code Ann. § 16-56-111(a), and that in suits to foreclose a mortgage or deed of trust, it shall be a sufficient defense that they have not been brought within the period of limitation prescribed by a law for a suit on the debt or liability

10

for the security of which they were given. Ark. Code Ann. § 18-49-101(a). Ocwen also admits that the loan was accelerated on March 17, 2011, and that the statute of limitations began to run at that time, expiring on March 16, 2016. Ocwen failed to foreclose on the property before that date, and Ocwen never expressly informed the Odens that the acceleration had been abandoned. The circuit court correctly applied the law to the facts, and the court found no persuasive or controlling law that led it to agree with Ocwen that its deceleration argument was applicable.

The evidence was that Ocwen sent computer-generated form letters to the Odens stating that the loan had been sent to an attorney for foreclosure while also asking for payment. The letters are titled "Delinquency Notice" and request that the Odens pay delinquent interest to bring the loan current while also clearly stating that the Odens' "account has been referred to an attorney to foreclose." The letters always maintained the option to continue with foreclosure proceedings pursuant to the 2011 acceleration. Ocwen sent the same form letters after the purported 2016 acceleration of the note. Therefore, under Ocwen's reasoning, it abandoned the acceleration a second time. Ocwen concedes this point.

Ocwen argues that the Odens cannot reasonably claim that the correspondence was somehow unclear that Ocwen was seeking less than the total amount due and therefore had abandoned the 2011 acceleration. *See Meachum*, *supra*. Ocwen argues that the Odens' reliance on a June 30, 2016 delinquency letter is misplaced and that what occurred after the 2016 acceleration is simply not relevant to whether the 2011 acceleration had been abandoned. It contends that even if the letter had been sent after the notice of acceleration,

11

it would indicate another abandonment of acceleration. The Odens argue that the loan was either accelerated or it was not—Ocwen cannot have it both ways.

The Odens point out that *Mitchell*, *supra*, is cited by Ocwen for the first time on appeal for its contention that a lender can abandon an acceleration by sending computer-generated form letters that advise the borrower that the loan had been sent to an attorney for foreclosure. The Odens contend that under the doctrine of invited error, Ocwen cannot argue that the circuit court was wrong in finding that there is no abandonment exception under the statute of limitations. *Harness v. Ark. Pub. Serv. Comm'n*, 60 Ark. App. 265, 962 S.W.2d 374 (1998).

In its reply brief, Ocwen claims that its abandonment argument is fully supported by Arkansas law, citing *Mitchell*, *supra*. Ocwen contends that it is indisputable from the record that the 2011 acceleration had been abandoned and that it is undisputed that Ocwen sent the Odens several demands for payment that were less than the total accelerated debt. Ocwen argues that the letters were clear and that the Odens fail to take account of the remainder of the paragraph in their letter that states, "The first step in this process, the first legal filing, has not yet been completed." Ocwen argues that the correspondence also makes clear that the Odens' failure to bring their "loan current may result in fees and foreclosure." Further, it claims that Travis Oden conceded in his deposition that he understood the correspondence to allow reinstatement upon payment of less than the entire amount due.

Ocwen also argues that it did not waive the right to cite on-point Arkansas Supreme Court precedent. Ocwen contends that it raised the abandonment issue before the court below and that citation of additional authority—*Mitchell*—in support of a raised argument

12

is common and in full accord with the established principle that an appellate court determines legal questions de novo. *Miss. Cty. v. City of Blytheville*, 2018 Ark. 50, 538 S.W.3d 822.

Regardless, we hold that *Mitchell* is distinguishable and not dispositive. The parties in *Mitchell* agreed in a consent decree to dismiss the pending lawsuit and agreed that the mortgage remained in effect "as though no suit had been filed." *Mitchell*, 206 Ark. at 256, 174 S.W.2d at 673. Thus, *Mitchell* held that the lender's previous acceleration of the debt would not control because of the terms of the order of dismissal. By contrast, in the instant matter, there is no clear intent to abandon the acceleration. The lender in *Mitchell* filed suit within the five-year statute of limitations; further, *Mitchell* illustrates the error in Ocwen's argument that the circuit court's decision will force lenders to rush to foreclosure rather than attempting to work with the borrower. There, the lender protected its interest by initiating a foreclosure action within the time permitted by statute but then continued to work with the borrower to settle the matter without foreclosure. *Id.*

We agree with the Odens that there is no Arkansas law dictating that the acceleration of a debt is abandoned solely because the creditor attempts to collect less than the fully accelerated amount while also intimating that the foreclosure action has been referred to an attorney. The Texas Supreme Court held that absent "evidence of abandonment or a contrary agreement between the parties, a clear and unequivocal notice of intent to accelerate and a notice of acceleration is enough to conclusively establish acceleration and therefore accrual. *Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 563 (Tex. 2001). Accordingly, we affirm the circuit court's decision.

13

IV. *Ocwen's Payment of Taxes and Insurance*

Ocwen argues that even if the acceleration of the loan balance had not otherwise been abandoned, the debt was revived by its annual payment of taxes. *Lueken v. Burch*, 214 Ark. 921, 925–26, 219 S.W.2d 235, 238 (1949) (When a mortgagee "discharge[s] an obligation imposed by the mortgage on the mortgagor such as payment of taxes or the premiums for insurance to protect the property, the mortgagee ha[s] the right to add the cost of such payments to the debt secured as part thereof, and the implied promise to repay would constitute a new point from which the statute of limitations would run."); *Polster v. Langley*, 201 Ark. 396, 144 S.W.2d 1063, 1065 (1940) (as between the contracting parties, payment of taxes interrupted the running of the statute of limitations). However, because the circuit court did not rule on this issue, this court is prohibited from addressing the issue on appeal. *Patton Hosp. Mgmt., LLC v. Bella Vista Vill. Coopershares Owner's Ass'n, Inc.*, 2016 Ark. App. 281, at 6, 493 S.W.3d 798, 803 (failure to obtain a ruling on an issue constitutes waiver of the issue on appeal).

V. *Equitable Lien*

Ocwen claims that it has an equitable lien against the property because the Odens used their default as a sword to evade their debt obligations. Equity abhors a forfeiture and will relieve against a forfeiture when the same has either expressly or by conduct been waived. *Berry v. Crawford*, 237 Ark. 380, 373 S.W.2d 129 (1963); *Little Rock Granite Co. v. Shall*, 59 Ark. 405, 27 S.W. 562 (1894); *Taylor v. Eagle Ridge Dev., LLC*, 71 Ark. App. 309, 29 S.W.3d 767 (2000). Accordingly, Ocwen urges this court to hold that equity prevents the harsh result of invalidation of the entire debt and security interest. But again, this court

is precluded from reviewing this issue on appeal because the circuit court did not rule on it. *Patton Hosp. Mgmt.*, *supra*.

Affirmed.

SWITZER and VAUGHT, JJ., agree.

*Bradley Arant Boult Cummings LLP*, by: *Mary Clay Morgan* and *Marc James Ayers*, pro hac vice, for appellants.

*Gill Ragon Owen, P.A.*, by: *Kelly W. McNulty* and *Mitchell S. Dennis*, for appellees.