This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-37506

**DON LAFFOON and GINGER S. GUTHRIE, Husband and Wife,**

Plaintiffs-Appellees,

v.

**THE BANK OF NEW YORK MELLON f/k/a THE BANK OF NEW YORK, as Trustee for the CERTIFICATEHOLDERS OF CWMBS, INC., CHL MORTGAGE PASS-THROUGH TRUST 2007-11, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-11,**

Defendant-Appellant,

and

**ALL UNKNOWN CLAIMANTS OF INTEREST IN THE PREMISES ADVERSE TO THE PLAINTIFFS' ESTATE, TITLE, AND INTEREST IN THE PREMISES,**

Defendants.

**APPEAL FROM THE DISTRICT COURT OF SANTA FE COUNTY**
**David K. Thomson, District Judge**

Sommer, Karnes & Associates LLP
Karl H. Sommer
Denise M. Thomas
Santa Fe, NM

for Appellees

Keleher & McLeod, P.A.

Thomas C. Bird
Sean Olivas
Albuquerque, NM

for Appellant

## MEMORANDUM OPINION

**BOGARDUS, Judge.**

**{1}** The Bank of New York Mellon (Defendant) appeals from the district court's denial of its motion to set aside the default and default judgment that was entered against Defendant in a quiet title action brought by Plaintiffs. Defendant argues in this appeal that the district court abused its discretion by ruling that (1) Defendant had not demonstrated a meritorious defense to Plaintiffs' claim that the statute of limitations to enforce the note on the subject property had run, and (2) setting aside the default judgment would be inequitable and the interest in finality outweighed the interest in judgment on the merits. Unpersuaded, we affirm.

## BACKGROUND

**{2}** On May 24, 2007, Plaintiffs obtained a residential loan from Countrywide Home Loans, Inc., in the principal amount of $838,560. The note for that loan was secured by a mortgage on certain real property located in Santa Fe, New Mexico (the Property). Defendant claims to be the assignee and holder in due course of the note and mortgage. Defendant has twice filed a complaint for judicial foreclosure of the Property.

**{3}** Defendant filed its first complaint for foreclosure on April 21, 2010. In that complaint, Defendant alleged that Plaintiffs were in default under the mortgage as of August 1, 2009, and notified Plaintiffs that Defendant had elected to seek the entire principal amount plus accrued interest due and payable consistent with the mortgage's acceleration clause. Just over a month after the complaint was filed, Defendant offered Plaintiffs a loan modification, which Plaintiffs rejected. On August 20, 2012, during the pendency of this first foreclosure action, Plaintiffs were granted a discharge in the bankruptcy court of their personal liability under the note. Despite the discharge of Plaintiffs' personal liability, Defendant offered Plaintiffs additional loan modifications on November 6, 2012, and January 18, 2013. A stipulated dismissal of the first complaint for foreclosure was granted on March 22, 2013.

**{4}** Approximately four months later, but before Defendant filed the second foreclosure complaint, Defendant sent Plaintiffs a "Notice of Intent to Accelerate Indebtedness and Foreclose." This notice, like the first complaint for foreclosure, alleged that Plaintiffs were in default as of August 1, 2009. By the date of this notice, Plaintiffs' personal liability under the note had been discharged for nearly eleven months.

**{5}** On October 16, 2014, Defendant filed its second complaint for foreclosure. In the second complaint, Defendant acknowledged Plaintiffs' discharge of personal liability in the bankruptcy court and noted that this foreclosure action was proceeding in rem only. As in the first complaint, Defendant's second complaint alleged that Plaintiffs were in default under the mortgage. However, unlike the first complaint or the ensuing, post-dismissal notice Defendant previously sent Plaintiffs, the second complaint did not identify a date of default. The second complaint again stated that Defendant elected to seek the entire principal amount plus accrued interest then due and payable. The second complaint was also dismissed without prejudice on December 10, 2015.

**{6}** On August 12, 2016, more than six years after Defendant filed its first complaint for foreclosure, Plaintiffs filed a complaint seeking to quiet title in the Property. In their complaint, Plaintiffs assumed without admitting that Defendant was the holder in due course of the note with standing to foreclose the mortgage but alleged that the statute of limitations had run on Defendant's right to commence an action for enforcement of the note. Plaintiffs served the complaint on Defendant via certified mail on September 27, 2016. On November 2, 2016, Plaintiffs moved for default judgment after Defendant did not answer the complaint for quiet title or otherwise appear. On November 17, 2016, the district court entered a default judgment in favor of Plaintiffs, awarding them the quieted title to the Property.

**{7}** On July 21, 2017, more than eight months after the entry of the default judgment, Defendant moved to set aside the default and default judgment, pursuant to Rule 1-055(C) NMRA and Rule 1-060(B)(1) NMRA. Defendant did not deny that it had been properly served with the complaint. Instead, Defendant argued that its failure to defend was excusable neglect due to attorney error and attached an affidavit from its regional counsel in support. Defendant further argued it had decelerated Plaintiffs' loan after it had accelerated the loan in 2010 and that such deceleration constituted a meritorious defense to Plaintiffs' claim. In support, Defendant attached the loan modification offers dated May 28, 2010, November 6, 2012, and January 18, 2013, as well as the notice of intent to accelerate dated July 26, 2013. Finally, Defendant argued that other equities also favored setting aside the default judgment. After briefing by the parties, the district court held a hearing on Defendant's motion.

**{8}** Following the hearing, the district court entered an order denying Defendant's motion. As relevant to this appeal, the district court made the following findings of fact and conclusions of law: (1) Defendant's alleged deceleration of the note and mortgage is not a meritorious defense based upon the facts in this case; (2) because the statute of limitations expired on April 21, 2016, setting aside the judgment in this case would not result in a different outcome; (3) an action to enforce the note or mortgage by Defendant after April 21, 2016, is time-barred and should be dismissed; (4) even if New Mexico recognizes deceleration, Defendant did not as a matter of fact or law decelerate the note and mortgage in this case; (5) Plaintiffs had obtained a home equity line of credit (HELOC) loan on the Property on March 14, 2017, in reliance upon the entry of default judgment; (6) the lender on the HELOC loan would be detrimentally affected by setting aside the judgment in this case; (7) Plaintiffs' reliance on the judgment when

obtaining the HELOC was an intervening equity that favors upholding the judgment and setting aside the judgment would prejudice Plaintiffs; and (8) based upon the long history of litigating the same facts in this case and even if the statute of limitations had not expired, the policy favoring finality of judgments outweighs the policy favoring trials on the merits. The district court did not address Defendant's excusable neglect arguments. Defendant appeals.

## DISCUSSION

**{9}** Defendant's first three arguments involve an overarching matter of first impression for New Mexico's appellate courts: Can a note that had been previously accelerated be decelerated in New Mexico? That is, does New Mexico permit a note to revert to the original installment agreement after a lender has demanded immediate repayment of the entire balance of a note in response to a borrower's default on that note? *See* Stephanie Schneider, *Deceleration: Slowing Down to Determine an Accelerated Loan's Post Dismissal Status*, 49 N.M. L. Rev. 149, 150 n.6-7 (2019) (discussing the concepts of acceleration and deceleration).

**{10}** Defendant first argues that New Mexico should recognize deceleration based on the concepts of waiver or abandonment and cites to authority from outside of New Mexico wherein deceleration was recognized.[1] Defendant's next two arguments seem to rest on a conclusion that New Mexico *would* recognize deceleration: Defendant first argues that the district court abused its discretion in ruling that Defendant had not demonstrated the existence of a meritorious defense—in this case, deceleration of Plaintiffs' note. Defendant then argues that the district court abused its discretion in its determination of when the statute of limitations commenced, and consequently expired, in this case because it had decelerated the previous acceleration. Defendant's final argument is that the district court abused its discretion in ruling that setting aside the default judgment would be inequitable and that the interest in finality outweighed the interest in judgment on the merits.

**{11}** Based on the record in front of us, we conclude that it is unnecessary to decide whether New Mexico would permit a previously accelerated note to be decelerated. This is because even if we assume that New Mexico would adopt the deceleration standard proposed by Defendant, we conclude, for the reasons stated in the second section of this opinion, that the district court did not abuse its discretion in ruling that Defendant had not demonstrated the existence of a meritorious defense. We then explain, in the third section, why Defendant has failed to demonstrate that the district court abused its discretion in ruling that intervening equities and prejudice weighed against setting aside

---

[1]We have reorganized Defendant's deceleration arguments for the purposes of this opinion. Defendant's argument that the district court erred by ruling that Defendant did not have a meritorious defense was presented before Defendant argues that New Mexico would recognize deceleration. However, Defendant does not explain how the district court could have erred in its meritorious defense ruling if New Mexico does not recognize deceleration. *See Corona v. Corona*, 2014-NMCA-071, ¶ 28, 329 P.3d 701 ("This Court has no duty to review an argument that is not adequately developed."). Accordingly, we treat Defendant's arguments concerning the district court's meritorious defense ruling as premised on New Mexico recognizing deceleration.

the default judgment in this case. We first turn to the standard for relief under Rule 1-060(B)(1) and our standard of review.

## I. Relief Under Rule 1-060(B)(1) and Our Standard of Review

{12} "In order to set aside a default judgment under Rule 1-060(B)(1), a court must determine that (1) the default judgment resulted from mistake, inadvertence, surprise or excusable neglect[;] and (2) the party seeking to set the default judgment aside had a meritorious defense." *Charter Bank v. Francoeur*, 2012-NMCA-078, ¶ 10, 287 P.3d 333. "If these two elements are found and there are no intervening equities in favor of the other party, a court should set aside the judgment." *Id.* (internal quotation marks and citation omitted). Because the district court in this case did not make any findings or conclusions regarding the first element, our focus in this appeal is on the second element and any intervening equities.

{13} "To establish the existence of a meritorious defense sufficient to warrant setting aside a default judgment, the movant must also proffer some statement of underlying facts in support of the defense." *DeFillippo v. Neil*, 2002-NMCA-085, ¶ 30, 132 N.M. 529, 51 P.3d 1183. "In reviewing a claimed meritorious defense the object is to ascertain whether there is some possibility that the outcome of the suit after trial will be different from the result achieved by default." *Ortiz v. Shaw*, 2008-NMCA-136, ¶ 18, 145 N.M. 58, 193 P.3d 605 (alteration, internal quotation marks, and citation omitted). Said another way, "the point of requiring a showing of [a] meritorious defense is to ensure that there is a reason to conduct a trial, i.e., to ensure that the movant has a viable legal theory and that there are genuine issues of fact that require submission to a fact[-]finder." *Magnolia Mountain Ltd., P'ship v. Ski Rio Partners, Ltd.*, 2006-NMCA-027, ¶ 17, 139 N.M. 288, 131 P.3d 675.

{14} "A grant or denial of a motion to set aside a default judgment rests within the sound discretion of the district court." *Charter Bank*, 2012-NMCA-078, ¶ 11. "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Sims v. Sims*, 1996-NMSC-078, ¶ 65, 122 N.M. 618, 930 P.2d 153. "However, because default judgments are generally disfavored, any doubts about whether relief should be granted are resolved in favor of the defaulting defendant and, in the absence of a showing of prejudice to the plaintiff, causes should be tried upon the merits." *Gandara v. Gandara*, 2003-NMCA-036, ¶ 9, 133 N.M. 329, 62 P.3d 1211 (alteration, internal quotation marks, and citation omitted); *see Ortiz*, 2008-NMCA-136, ¶ 12 ("Because trial on the merits is preferred, only a slight abuse of discretion is sufficient to justify reversal." (internal quotation marks and citation omitted)). Further, "our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Gandara*, 2003-NMCA-036, ¶ 9 (alteration, internal quotation marks, and citation omitted).

## II. The District Court Did Not Abuse Its Discretion in Ruling That Defendant Failed to Demonstrate the Existence of a Meritorious Defense

**{15}** Defendant argues that the district court abused its discretion when it ruled that Defendant had not demonstrated the existence of a meritorious defense to Plaintiffs' claim that the statute of limitations had run. Defendant takes the position that it had decelerated the note before Plaintiffs' discharge of their personal liability under the note in the bankruptcy court. Defendant contends that this constitutes a meritorious defense because deceleration would serve to reset the start of the statute of limitations to the date of the last installment payment Plaintiffs missed before their bankruptcy discharge.[2]

**{16}** In support of its alleged meritorious defense of deceleration, Defendant introduced evidence that it (1) offered loan modifications on May 28, 2010, November 6, 2012, and January 18, 2013; (2) dismissed its first foreclosure action on March 22, 2013; (4) sent Plaintiffs a notice of intent to accelerate the loan on July 26, 2013; (5) dismissed its second foreclosure action on December 10, 2015; and (6) sent Plaintiffs statements that showed less than the total amount under the loan. Defendant asserts that the district court improperly weighed or rejected this evidence when the district court found that Defendant had not demonstrated the existence of a meritorious defense.

**{17}** As an initial matter, we note that all but one of the acts on which Defendant relies to support its deceleration argument—that is, the May 28, 2010 letter—occurred after Plaintiffs had discharged their personal liability in the bankruptcy court. Nowhere in its briefing does Defendant explain how actions it took *after* Plaintiffs' discharge in bankruptcy court can cause a deceleration *before* that discharge. *See Corona*, 2014-NMCA-071, ¶ 28 ("This Court has no duty to review an argument that is not adequately developed."). Further, Defendant has not cited any authority to support its argument that post-discharge actions can be used as evidence of pre-discharge deceleration. *See Curry v. Great Nw. Ins. Co.*, 2014-NMCA-031, ¶ 28, 320 P.3d 482 ("Where a party cites no authority to support an argument, we may assume no such authority exists."). Accordingly, we cannot say that the district court erred by not considering Defendant's post-discharge acts when making its meritorious defense ruling, to the extent that the district court refused to consider that evidence. Nevertheless, even if the district court erroneously limited its consideration of Defendant's evidence of deceleration to the one pre-discharge letter sent to Plaintiffs, Defendant's meritorious defense argument still fails for the reasons that follow.

**{18}** Defendant relies on authority from other jurisdictions recognizing deceleration of a previously accelerated note in two instances: (1) solely upon dismissal of a foreclosure action; and (2) through unilateral action by the note or mortgage holder, including offering a loan modification or requesting payment on less than the full amount of the loan. Defendant, however, only argues that New Mexico should adopt the latter approach. For the purposes of our analysis, we assume without deciding, that New

---

[2]Plaintiffs contend that Defendant did not preserve its argument that the statute of limitations recommenced after deceleration upon the last missed payment before Plaintiffs' bankruptcy discharge. In response, Defendant identifies portions of the record that it believes demonstrates preservation. We assume without deciding that Defendant preserved this argument.

Mexico would adopt the approach of the authorities cited by Defendant that recognize deceleration based on unilateral action by the note or mortgage holder.

**{19}** In this case, Defendant argues that the totality of the evidence suggests that it decelerated the note during its 2010 foreclosure action, which was based on its acceleration of the note. The two main authorities relied on by Defendant, however, did not recognize deceleration, which is referred to as abandoned acceleration, in such circumstances. For example, Defendant relies on *Boren v. U.S. National Bank Ass'n*, 807 F.3d 99, 103 (5th Cir. 2015) as an example of unilateral action by the mortgage holder that was found to be evidence of "an intent to abandon the previous acceleration." *Id.* at 106. However, the bank's unilateral action in *Boren*—a notice of default sent *after* the bank's second application for expedited nonjudicial foreclosure had been dismissed—is distinguishable from the facts here: Defendant's attempt at deceleration occurred while its foreclosure action was pending. Because the foreclosure action against Plaintiffs remained in place, there is no evidence of any intent on the part of Defendant to abandon its previous acceleration.

**{20}** Defendant's reliance on *Leonard v. Ocwen Loan Servicing, L.L.C.*, 616 F. App'x 677, 678, 680 (5th Cir. 2015) (per curiam) suffers from the same inconsistency. In *Leonard*, the district court's conclusion that the bank had abandoned its previous acceleration of the loan was affirmed based on evidence that the bank *took no action to foreclose* and sent monthly account summaries indicating the overdue balance and requesting past due payments even after it had sent the notice of acceleration. *Id.* Contrary to the bank's actions in *Leonard*, here Defendant continued its efforts to foreclose on the note despite the one loan modification offered to Plaintiffs. Such efforts seem contrary to an intent to decelerate the loan.

**{21}** Two additional authorities cited by Defendant suggest that deceleration can occur while a foreclosure is ongoing but only in the context of a forbearance agreement. *See Barzelis v. Flagstar Bank*, 2016 WL 6471290, *6 (N.D. Tex. 2016) (concluding the acceleration notice was withdrawn based on the forbearance agreement—wherein the bank agreed to suspend foreclosure sale of the property in exchange for payments—and the pending foreclosure was dismissed as soon as the forbearance was met); *In re Rosas*, 520 B.R. 534, 542 (W.D. Tex. 2014) (finding that a forbearance agreement and the tendering/accepting of payments without seeking remedies after the forbearance agreement, individually and together, were sufficient to abandon all accelerations that occurred before the forbearance agreement). These authorities are also distinguishable because Defendant has not argued, and the record does not suggest, that the parties entered into a forbearance agreement in this case.

**{22}** None of the other authorities cited by Defendant offer any more support than the authorities that we have explicitly distinguished above. Put simply, none of the authorities cited by Defendant support recognizing deceleration in the circumstances presented in this case. *See In re Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329 ("We assume where arguments in briefs are unsupported by cited authority,

counsel[,] after diligent search, was unable to find any supporting authority. We therefore will not do this research for counsel.").

**{23}** Accordingly, even when we accept the facts alleged and analytical framework suggested by Defendant, we cannot say the district court erred by ruling that Defendant failed to demonstrate that "there is some possibility that the outcome of the suit after trial will be different from the result achieved by default." *Ortiz*, 2008-NMCA-136, ¶ 18 (internal quotation marks and citation omitted). For that reason, we conclude that the district court did not abuse its discretion in ruling that Defendant had not demonstrated the existence of a meritorious defense to Plaintiffs' claim that the statute of limitations had run.

### III. The District Court Did Not Abuse Its Discretion in Ruling That Setting Aside the Default Judgment Would Be Inequitable and the Interest in Finality Outweighed the Interest in Judgment on the Merits

**{24}** When addressing the district court's ruling that prejudice to Plaintiffs and intervening equities made setting aside the judgment inequitable, Defendant contends that (1) "the district court apparently overlooked the fact that Plaintiffs rushed to enter default and obtain a default judgment without ever informing [Defendant] or its counsel";[3] (2) "the district court did not consider the fact that both Plaintiffs and the mortgage lender on the HELOC knew of the prior $800,000 loan which Plaintiffs failed to pay, as well as the default judgment itself, which remained open to challenge by [Defendant] when the loan issued"; and (3) "the district court did not address the fact that declining to set aside the default would result in a windfall to Plaintiffs of over $800,000, without ever having to establish their case on the merits." Defendant asserts that "[t]he equities do not favor a default judgment of this magnitude"; "there is no intervening equity that would prevent setting aside the default"; and the "interest in . . . finality is outweighed by the justice of allowing trial on the merits."[4]

**{25}** Defendant made these same arguments to the district court in its briefing on its motion to set aside the default judgment as well as at the hearing. It is clear from the district court's order denying Defendant's motion that it rejected Defendant's arguments.

---

3Defendant does not direct this Court to any authority that indicates Plaintiffs were required to inform Defendant or its counsel of the default or default judgment. In fact, Defendant acknowledged that there was no such requirement during the hearing on its motion to set aside the default judgment. *Cf.* Rule 1-055(B) (requiring written notice of the application for default judgment at least three days before to the hearing on the application when "the party against whom judgment by default is sought has appeared in the action"). Because Defendant has not explained the significance of a lack of notice where there is no notice requirement, we decline to further address this argument. *See Corona*, 2014-NMCA-071, ¶ 28 ("This Court has no duty to review an argument that is not adequately developed.").

4Defendant challenges the district court's finality conclusion for the first time in its reply brief and, even then, does so in a conclusory manner. *See Corona*, 2014-NMCA-071, ¶ 28. Defendant's failure to challenge this aspect of the district court's ruling in its brief in chief could be construed as a waiver of that challenge. *See Wilcox v. N.M. Bd. of Acupuncture & Oriental Med.*, 2012-NMCA-106, ¶ 15, 288 P.3d 902 (stating that we do not consider an appellant's arguments that were not raised in the brief in chief, unless such arguments are directed to new arguments or authorities in the answer brief). Nevertheless, as we explain below, we cannot say that the district court's finality conclusion was erroneous.

Therefore, Defendant's reiteration of these contentions seems to be an invitation to this Court to reweigh the evidence and make our own determination regarding whether setting aside the default judgment in this case would be inequitable. That is not our task on appeal. *See Charter Bank*, 2012-NMCA-078, ¶ 11 ("A grant or denial of a motion to set aside a default judgment rests within the sound discretion of the district court.").

**{26}** Further, the record belies Defendant's contention that the district court overlooked, did not consider, or otherwise failed to address their arguments. *See Chan v. Montoya*, 2011-NMCA-072, ¶ 9, 150 N.M. 44, 256 P.3d 987 ("It is not our practice to rely on assertions of counsel unaccompanied by support in the record. The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). The district court's order demonstrates that the district court was aware of the timeline on which Plaintiffs sought default. The district court made findings, substantially supported by the record, regarding the following: (1) the date Plaintiffs filed their complaint to quiet title; (2) the date Defendant was served with the complaint; (3) the time period allowed for Defendant's answer to the complaint; and (4) the date Plaintiffs filed a motion for default judgment. The district court's order also establishes that it was aware of the principal value of the note on the Property and also that denial of Defendant's motion would necessarily result in Plaintiffs' quieted title to the Property remaining undisturbed.

**{27}** Based on the foregoing, we believe that Defendant's arguments simply identify reasons that detract from the district court's decision regarding intervening equities and prejudice to Plaintiffs. Such arguments are insufficient to establish that the district court abused its discretion. *See Grant v. Cumiford*, 2005-NMCA-058, ¶ 13, 137 N.M. 485, 112 P.3d 1142 ("When there exist reasons both supporting and detracting from a [district] court decision, there is no abuse of discretion." (internal quotation marks and citation omitted)). Nevertheless, we take a moment to identify reasons why Defendant has not persuaded us that the district court abused its discretion in ruling that setting aside the default judgment in this case would be inequitable and that the interest in finality outweighed the interest in judgment on the merits.

**{28}** Defendant has not challenged the district court's findings that (1) Plaintiffs relied on the default judgment when they obtained the HELOC loan; and (2) the HELOC lender, as a first position lienholder, would be detrimentally affected by setting aside the judgment. Implicit in these findings is a recognition that setting aside the default judgment would create prejudice and uncertainty for both Plaintiffs and the HELOC lender. These considerations are significant because, as our Supreme Court has recognized, "the mortgage industry in New Mexico requires stability." *Phoenix Funding, LLC v. Aurora Loan Servs., LLC*, 2017-NMSC-010, ¶ 43, 390 P.3d 174. Defendant has not cited any authority suggesting that Plaintiffs' reliance and the lender's detriment cannot outweigh the countervailing interest in a decision on the merits, especially under the circumstances present here. Further, Defendant does not cite any cases where an appellate court has reversed a district court's ruling that it would be inequitable to set aside a default judgment, let alone a case that reversed on facts similar to those in this case. *See Curry*, 2014-NMCA-031, ¶ 28 ("Where a party cites no authority to support an

argument, we may assume no such authority exists."). Nevertheless, we are aware of only one case in New Mexico in which an appellate court reversed a district court's finding of intervening equities and prejudice. *See Chase v. Contractors' Equip. & Supply Co.*, 1983-NMCA-058, ¶¶ 37-54, 100 N.M. 39, 665 P.2d 301 (concluding that "adverse financial consequences to [the] plaintiff resulting from delaying the final disposition of [the] case" to be "insufficient to defeat the motion for setting aside a default" and explaining how such consequences could be mitigated by the district court). However, the intervening equities and prejudice found by the district court in *Chase* are distinct from those found by the district court here. For these reasons, we are not persuaded that the district court abused its discretion in ruling that setting aside the default judgment would be inequitable.

{29}    Next, we note that the district court's findings regarding the procedural history of this case, which have substantial support in the record, demonstrate that there were no procedural irregularities in Plaintiffs seeking and obtaining the default and default judgment. Further, Defendant has not challenged the district court's finding that the default judgment followed a long history of litigating the same facts, including Defendant twice attempting to foreclose on the Property without success despite litigating the first foreclosure for approximately three years and the second foreclosure for over a year. The significant and lengthy litigation history of this case distinguishes it from precedential authority on default judgments in which the underlying cases had little to no litigation before the entry of the default judgment. Further, given that "the mortgage industry in New Mexico requires stability[,]" *Phoenix Funding, LLC*, 2017-NMSC-010, ¶ 43, we cannot say that the district court's ruling in this instance that the policy favoring finality of judgments outweighs the policy favoring trials on the merits was an abuse of discretion. *See DeFillippo*, 2002-NMCA-085, ¶ 24 ("[U]nder Rule 1-060(B)[,] the courts must balance the policy favoring trials on the merits with the conflicting policy favoring the finality of judgments.").

**CONCLUSION**

{30}    We affirm.

{31}    **IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**JACQUELINE R. MEDINA, Judge**